UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: ) | | |
| ) | | |
| **WILLIAM AND MICHELLE MULLINS** ) | Case No. 15-46423 | |
| **LIMITED LIABILITY COMPANY,** ) | Chapter 11 | |
| ) | | |
| Debtor. ) | Hon. Phillip J. Shefferly | |
| In re: ) | | |
| ) | | |
| **M. MULLINS, INC.** ) | Case No. 15-46423 | |
| **d/b/a THE BEGINNERS INN CHILD** ) | Chapter 11 | |
| **CARE AND LEARNING CENTER,** ) | | |
| ) | Hon. Phillip J. Shefferly | |
| Debtor. ) | | |

**COVER SHEET FOR MOTION TO USE CASH
COLLATERAL OR TO OBTAIN CREDIT**

The Debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | _____ Yes<br>__X__ No | Page ____, ¶ ____ |

{36908/1/DT945155.DOC;1}

15-46423-pjs   Doc 9   Filed 04/24/15   Entered 04/24/15 14:00:42   Page 1 of 18

| | | |
|---|---|---|
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | \_\_X\_\_ Yes<br>_____ No | Page 2, ¶ 10 |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br>\_\_X\_\_ No | Page \_\_\_\_, ¶ \_\_\_\_ |

| | | |
|---|---|---|
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br>___X___ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | _____ Yes<br>___X___ No | Page ____, ¶ ____ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br>___X___ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br>___X___ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | _____ Yes<br>___X___ No | Page ____, ¶ ____ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | _____ Yes<br>___X___ No | Page ____, ¶ ____ |

Respectfully submitted,

Dated: April 24, 2015

**KERR, RUSSELL AND WEBER, PLC**

By: /s/ Jason W. Bank
     Jason W. Bank (P54447)
*Proposed Counsel for Debtors and Debtors in Possession*
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jbank@kerr-russell.com

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| In re: | ) | |
|---|---|---|
| | ) | |
| **WILLIAM AND MICHELLE MULLINS** | ) | Case No. 15-46423 |
| **LIMITED LIABILITY COMPANY,** | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Phillip J. Shefferly |

| In re: | ) | |
|---|---|---|
| | ) | |
| **M. MULLINS, INC.** | ) | Case No. 15-46424 |
| **d/b/a THE BEGINNERS INN CHILD** | ) | Chapter 11 |
| **CARE AND LEARNING CENTER,** | ) | |
| | ) | Hon. Phillip J. Shefferly |
| Debtor. | ) | |

### DEBTORS' FIRST DAY MOTION FOR ENTRY OF AN INTERIM ORDER AND FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

William and Michelle Mullins Limited Liability Company ("WMM") and M. Mullins, Inc. d/b/a The Beginners Inn Child Care and Learning Center ("Beginners Inn") (collectively, "Debtors"), by and through their counsel, Kerr, Russell and Weber, PLC, and in support of their First Day Motion for Entry of an Interim Order and Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection, states as follows:

### SUMMARY OF RELIEF REQUESTED

1. The Debtors respectfully request that the Court schedule a hearing as soon as possible (or by April 29, 2015) to authorize Debtors' use of cash collateral on an interim basis in order to avoid immediate and irreparable harm to the estates.

2. As set forth below, the total amount of assets of Debtors that may be considered cash collateral as of the bankruptcy filing date is relatively small (approximately $3,500). Further, it is not clear whether any creditors have a perfected interest in cash collateral.

Nevertheless, Debtor seeks authority to use cash collateral under an abundance of caution. Without authority to use cash collateral, the Debtors may not be able to operate its business and pay expenses necessary for its continued operations. This result could potentially destroy Debtors' going concern value.

3. As set forth in greater detail below, to the extent that it is determined that any creditors have a valid interest in cash collateral, Debtors propose to provide adequate protection in the form of replacement liens, to the extent Debtors use cash collateral and fail to replace it, to any creditors who assert and have a valid, properly perfected interest in Debtors' cash collateral.

## **GENERAL ALLEGATIONS**

4. On April 23, 2015, (the "Petition Date"), each of the Debtors filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code (the "Code").

5. Since the Petition Date, each of the Debtors has operated as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Code.

6. No official committee of creditors holding unsecured claims has been appointed in this case.

7. Debtors file this Motion Authorizing the Debtor to Use Cash Collateral and Providing Adequate Protection (the "Motion") pursuant to Fed. R. Bankr. P. 4001(b) and E.D. Mich. LBR 4001-2(a).

8. This Court has jurisdiction over the matters relating to this Motion pursuant to 28 U.S.C. §1334(a). This is a core matter pursuant to 28 U.S.C. §157(b)(2)(M).

9. No statements made herein should be construed as an admission as to the validity or priority of any lien, claim or interest in cash collateral.

## BACKGROUND AND OVERVIEW OF DEBTORS

10. Beginners Inn operates a child care and learning center for infants through 12-year old children in Canton, Michigan.

11. WMM owns the real property located at 7505 Canton Center Road, Canton, MI 48187 (the "Property") which houses the child care and learning center operations.

12. Michelle Rodriguez, f/k/a Michelle Mullins, is the managing member and president of each of the Debtors. She is the only equity security holder/member of the Debtors.

13. In support of this Motion, Debtors have filed and incorporate the Declaration of Michelle Rodriguez in Support of Chapter 11 Petitions and First Day Motions (the "Rodriguez Declaration") as if fully restated herein. The Rodriguez Declaration contains additional facts in support of this Motion.

## SUMMARY OF ASSETS AND LIABILITIES

14. In 2014, Beginners Inn earned approximately $1,004,170 in gross revenues from the operation of its business. The value of Beginners Inn's assets rests primarily in the going concern value of the child care operations. As of the bankruptcy filing date, Beginners Inn held approximately $2,500 in cash and approximately $1,000 in receivables owed by Beginners Inn families who use the child care services. There are no other assets that may be considered cash collateral. Beginners Inn also owns other hard assets consisting primarily of a passenger van, office furniture and school furniture.

15. Upon information and belief, the Property owned by WMM is valued between $1.6 million and $1.8 million. WMM has not obtained a recent appraisal of the Property.

16. Comerica Bank ("Comerica") and the U.S. Small Business Administration ("SBA") assert mortgages against the Property. Beginners Inn tenders rent payments to WMM pursuant to a Lease equal to the amount of monthly payments paid by WMM to Comerica.

17. Comerica and the SBA also assert that Michelle Rodriguez has personally guaranteed the debt owed to these entities.

18. Comerica also asserts a security interest against substantially all of the assets of Beginners Inn. However, it appears that Comerica's security interest against Beginners Inn is not perfected since there is no UCC financing statement on file.

19. Upon information and belief, no other creditors assert an interest in cash collateral.

## BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

20. The complete details regarding the history of the Debtors are contained in the Rodriguez Declaration.

21. On July 16, 2009, William and Michelle Mullins Limited Liability Company and M. Mullins, Inc. d/b/a The Beginners Inn Child Care and Learning Center, along with the Beginners Inn Day Care Center, Inc. filed Chapter 11 bankruptcy petitions before this Court (collectively, the "2009 Bankruptcy Proceedings").[1] An order for joint administration was entered under Case No. 09-62107.

22. These companies filed for Chapter 11 in 2009 primarily as a result of levies and other collection activities undertaken by the Internal Revenue Service ("IRS"), which prompted a lawsuit by Comerica.

23. On November 12, 2009, the companies filed a Combined Disclosure Statement and Plan of Reorganization (the "2009 Plan"). Some of the material provisions of the 2009 Plan included:

---

[1] The bankruptcy cases numbers were Case No. 09-62107 for William and Michelle Mullins, LLC, Case No. 09-62109 for Beginners Inn Day Care Center, Inc. ("Beginners Inn"), and Case No. 09-62113 for M. Mullins, Inc.

(a) Continued payments towards Comerica's secured claim, with an extended maturity date of July 1, 2019.

(b) Continued payments towards the secured claims held by the SBA arising from a Mortgage against the Property (junior to Comerica's Mortgage).

(c) Payment of the IRS claims (which exceeded $200,000) over a five-year period in accordance with 11 U.S.C. § 1129.

(d) Payment of real property taxes to Wayne County.

(e) Substantive consolidation of the assets of M. Mullins, Inc. and Beginners Inn Day Care Center, Inc., and the dissolution of the Beginners Inn Day Care Center, Inc. corporate entity.

24. On January 15, 2010, this Court entered the Order Approving and Confirming Combined Disclosure Statement and Plan of Reorganization. As a result of negotiations between the parties, and in order to achieve a consensual confirmation, Debtors and Comerica agreed to reinstate the original maturity date of July 1, 2014 on Comerica's loans. Shortly thereafter, the 2009 bankruptcy proceedings were closed.

25. The Debtors expected and hoped to obtain a refinancing of Comerica's loan by July 1, 2014.

26. After closing of the Chapter 11 case, Debtor, WMM continued to make monthly payments to Comerica under the applicable loan documents. Debtor, Beginners Inn, continued to make payments to creditors as required under the 2009 Plan.

27. Beginners Inn paid off all of the claims owed to the Internal Revenue Service. On October 8, 2014, the IRS issued its Release of Tax Lien against Debtors' assets.

28. WMM attempted to refinance and satisfy the Comerica Bank loan by the July 1, 2014 maturity date. Unfortunately, these efforts were not successful.

29. Thereafter, the Debtors conducted extensive negotiations with Comerica and exchanged draft term sheets for a potential forbearance agreement.

30. Unfortunately, on August 11, 2014, the Debtors' building experienced significant flooding as a result of the Great Flood of 2014. As a result, Debtors were required to expend significant funds to repair the premises in order to be ready for the busy fall season, when enrollment increases significantly at the child care center.

31. On October 1, 2014, Comerica accelerated its indebtedness and issued a default letter. Comerica temporarily forbeared from pursuing its remedies based upon Debtors' agreement to hire a financial advisor, Rysenia Capital Advisors, which was a financial advisor approved by Comerica.

32. Rysenia provided a significant amount of financial information to Comerica and helped to negotiate the terms of a forbearance agreement.

33. On April 7, 2015, Comerica filed a lawsuit against Debtors seeking to recover $1,169,752.44. Comerica also sought the appointment of a receiver. The hearing on the appointment of a receiver is scheduled for April 24, 2015.

34. The Debtors filed the Chapter 11 petitions to preserve the going concern value of their operations for the benefit of their families who rely on the child care and learning center. The Debtors also filed to preserve value for the benefit of all of their creditors.

## REQUEST FOR USE OF CASH COLLATERAL

35. Debtors are confident that their post-petition operations will be profitable and that they will be able to remain profitable during this bankruptcy proceeding and beyond. Debtors

have prepared an operating budget (the "Budget"), attached as Exhibit B, which contain projected sales and an anticipated budget of necessary expenditures for the next 30 days.

36. The Budget demonstrates Debtors' anticipated revenue and expenses that are necessary for the Debtors' operations in order to avoid immediate and irreparable harm. The projected revenue and expenses are based upon historical financial data over the past year as well as projected sales going forward.

37. Based upon the Budget, the Debtors assert that they will be able to provide creditors with adequate protection of their interests in cash collateral of the Debtor through the continuing liens being offered below and other adequate protection offered.

## **ADEQUATE PROTECTION**

38. As adequate protection for any validly perfected, security interests that Comerica, the SBA, and any other secured creditors may claim in the cash collateral of Debtors, and to the extent that the Debtors use such cash collateral and does not replace same, Debtors offer replacement liens in all types and descriptions of collateral which may have been secured and that are created, acquired or arise after the Petition Date.

39. Debtors' past operating profits, and projected continued operating profits supply sufficient adequate protection. *See, Matter of Pursuit Athletic Footwear, Inc.*, 193 B.R. 713 (Bankr. D. Del. 1996).[2]

40. On the basis of the adequate protection submitted above, the Debtors submit that they should be granted authority to use its cash collateral.

41. In spending cash collateral, Debtors will only spend money for those expenses that are necessary for the operations of the business of the Debtors.

---

[2] In *Pursuit Athletic Footwear*, the Court found that credible projections of post-petition operating profits provided the secured creditor with adequate protection, even though the debtor had not operated profitably prior to the Petition Date. 193 B.R. at 717-718.

42. As part of its ordinary course of business, the Debtors are requesting that this Court allow it to escrow on a weekly basis $1,000 into the client trust account of its counsel and $1,000 into the client trust account of its financial advisors to pay professional fees which may be allowed by this Court for the professionals of the Debtors in connection with this case during the course of their bankruptcy proceedings (the "Professional Fees").

43. The Debtors submit that the Professional Fees will remain the property of the estate. The purpose of this escrow account is to establish a payment plan such that if, and when, fees for the Debtors' professionals are allowed, the Debtors will have already set aside sums towards payment of these obligations.

## NOTICE

44. Debtors will provide notice of this Motion and any expedited hearing in accordance with E.D. Mich. LBR 9013-1. Debtors will immediately provide notice of the hearing on the Motion as required.

## CONCLUSION

45. Without authority to use cash collateral the Debtors' operations would cease, which would result in immediate and irreparable harm that would be detrimental to the estates, their creditors and all of the parents and children who depend upon the Debtors' services.

46. The entry of an order authorizing Debtors' use of cash collateral will minimize disruption of the Debtors' business and will increase the possibility of a successful rehabilitation, and is, therefore, in the best interests of the estates and their creditors.

47. At this time, the Debtors are only seeking to use cash collateral on an interim basis to pay necessary operating expenses (as outlined in the Budget) to avoid immediate and irreparable harm to the estates until the Court holds a final hearing. To the extent that no parties object to the order authorizing Debtors' use of cash collateral after service of the order, the

Debtors will request that the Court cancel the final hearing, and the order attached as Exhibit A (or an order substantially similar to the order attached as Exhibit A) will become a final order authorizing the use of Debtors' cash collateral going forward.

**WHEREFORE**, the Debtors respectfully request this Honorable Court:

(a) enter the order attached as Exhibit A (or an order substantially similar to the order attached as Exhibit A) authorizing the Debtors to use cash collateral and granting adequate protection; and

(b) enter an order scheduling an expedited hearing on this motion; and

(c) grant such further relief as is just and equitable to the Debtors.

Respectfully submitted,

Dated: April 24, 2015  **KERR, RUSSELL AND WEBER, PLC**

By: /s/ Jason W. Bank
Jason W. Bank (P54447)
*Proposed Counsel for Debtors and Debtors in Possession*
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
jbank@kerr-russell.com

**EXHIBIT A**

**PROPOSED FIRST DAY ORDER AUTHORIZING
THE DEBTORS' USE OF CASH COLLATERAL AND
PROVIDING ADEQUATE PROTECTION**

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **WILLIAM AND MICHELLE MULLINS** | ) | Case No. 15-46423 |
| **LIMITED LIABILITY COMPANY,** | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Phillip J. Shefferly |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **M. MULLINS, INC.** | ) | Case No. 15-46424 |
| **d/b/a THE BEGINNERS INN CHILD** | ) | Chapter 11 |
| **CARE AND LEARNING CENTER,** | ) | |
| | ) | Hon. Phillip J. Shefferly |
| Debtor. | ) | |

**FIRST DAY ORDER AUTHORIZING THE DEBTORS'
USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION**

   This matter is before the Court on the First Day Motion For Entry of an Interim and Final Order Authorizing Use of Cash Collateral and Providing Adequate Protection (the "Motion") filed by William and Michelle Mullins Limited Liability Company ("WMM") and M. Mullins, Inc. d/b/a The Beginners Inn Child Care and Learning Center ("Beginners Inn") (collectively, "Debtors"), pursuant to Fed. R. Bankr. P. 4001(b) and E.D. Mich. LBR 4001. The Debtors seek entry of a First Day Order Authorizing Debtors to Use Cash Collateral and Granting Adequate Protection (the "Order"); all capitalized terms used in this Order and not defined herein have the meanings set forth in the Motion; the Court has determined that notice was sufficient given the circumstances; the Court has determined that the estates will suffer immediate and irreparable harm if the Motion is not granted on an interim basis, subject to a final hearing on the Motion; the Court has determined that the adequate protection offered to secured creditors is sufficient

under the circumstances of these proceedings; any objections to the Motion have been overruled, and the Court being fully advised in the premises:

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted in its entirety.

2. Debtors are authorized to use cash collateral in accordance with the Budget (attached as Exhibit B to the Motion). Debtors shall not make any expenditures in excess of the Budget pending the final hearing.

3. Debtors are authorized to grant adequate protection to any creditors asserting an interest in the cash collateral, including Comerica Bank, in the form of replacement liens in accordance with the terms of the Motion, to the extent that such creditors have a valid, perfected security interest in cash collateral.

4. Comerica Bank and any other secured creditors that may claim a validly perfected interest in the cash collateral of Debtors are hereby granted replacement liens in all collateral that may have been secured by the applicable prepetition loan documents, which are created, acquired or arise after the bankruptcy filing date, but only to the extent that these creditors have a valid, binding interest in cash collateral and Debtors use cash collateral and do not replace it.

5. Within 24 hours, Debtors shall serve a copy of this Order and Motion (if not already served) upon all parties required to be served in accordance with Federal Rule of Bankruptcy Procedure 4001(d) and E.D. Mich. LBR 4001.

6. If objections to this Order are filed and served within 14 days after it is served, the Court shall conduct a final hearing on May \_\_\_\_, 2015 at \_\_\_\_\_ \_.m. to consider such objections.

7. If no objections are timely filed, this Order shall become a final order without any further hearing or action of the Court, and Debtors will be authorized to spend funds for those expenses referenced in the Budget, as well as any supplemental or amended Budgets filed with the Court going forward.

8. Notwithstanding the foregoing, an official committee may file objections within 14 days after it is served with this Order.

9. Debtors' authority to use cash collateral shall continue until otherwise ordered by the Court.

10. Debtors are authorized to escrow the Professional Fees as more fully set forth in the Motion. Debtors are authorized and directed to pay U.S. Trustee fees as they become due.

# EXHIBIT B

# 30 DAY BUDGET

# M Mullins Inc. 30 Day Budget 4/27/2015 - 5/29/2015

| Week Beginning: | 04/27/15 | 05/04/15 | 05/11/15 | 05/18/15 | 05/25/15 | Total |
|---|---|---|---|---|---|---|
| Weekly Cash Receipts | $ 24,000.00 | $ 22,000.00 | $ 21,000.00 | $ 22,000.00 | $ 21,000.00 | $ 110,000.00 |
| Payee Name: | | | | | | $ - |
| Allied | | | | | | $ - |
| AOL | $ 23.99 | | | | | $ 23.99 |
| ARC - American Red Cross | | | | | | $ - |
| AT&T (Internet/Office) | | $ 30.00 | | | | $ 30.00 |
| AT&T (Internet/Office) | | | | $ 30.00 | | $ 30.00 |
| AT&T (Phone/Utilities) | | | $ 191.13 | | | $ 191.13 |
| Blue Care Network | | | | | $ 302.00 | $ 302.00 |
| Business Card | | | | | | $ - |
| Canton Chamber | | | | | | $ - |
| Comerica | | | | | | $ - |
| Cutting Edge | | | | | | $ - |
| Discount School Supplies | | | | | | $ - |
| DTE (New Building) | | | $ 1,100.00 | | | $ 1,100.00 |
| DTE (Old Building) | | | $ 600.00 | | | $ 600.00 |
| GFS | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 150.00 | $ 750.00 |
| Hobby Lobby | | | | | | $ - |
| Ichat - Employee Back Ground Check | | | | | | $ - |
| Interest W/H | | | | | | $ - |
| Intuit | $ 150.00 | | | | | $ 150.00 |
| IRS (1040 Payment Plan) | | $ 500.00 | | | | $ 500.00 |
| IRS (940) Quarterly | $ 707.26 | | | | | $ 707.26 |
| IRS (941) | $ 5,600.00 | | $ 5,600.00 | | $ 5,600.00 | $ 16,800.00 |
| IRS (941 Payment Plan) | | | $ 1,500.00 | | | $ 1,500.00 |
| Joe Randazzo Fruit Market | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 150.00 |
| Keeth Heating & Cooling | | | | | | $ - |
| Kerr Russell Weber | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 5,000.00 |
| Krogers | $ 50.00 | | $ 50.00 | | $ 50.00 | $ 150.00 |
| Lowes | | | | | | $ - |
| Lucas Nursery | | | | | | $ - |
| Net Payroll | | $ 16,000.00 | | $ 16,000.00 | | $ 32,000.00 |
| Office | $ 100.00 | | $ 100.00 | | $ 100.00 | $ 300.00 |
| O'Reilly Auto Parts | | | | | | $ - |
| Paul Sharrow CPA | | | | | | $ - |
| Plymouth Plumbing | | | | | | $ - |
| PNC (Service Charge) | $ 40.00 | | | | | $ 40.00 |
| Progressive Insurance | | | | | | $ - |
| Property Taxes | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 5,000.00 |
| RIZZO | $ 115.00 | | | | | $ 115.00 |
| Rysenia Capital Solutions | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 5,000.00 |
| Saftey Systems | | | | | | $ - |
| Sams Club | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 1,000.00 |
| SBA | | | | | | $ - |
| Speedway | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 1,000.00 |
| State Withholding Taxes | | | | | $ 1,936.95 | $ 1,936.95 |
| Terminix | | $ 66.00 | | | | $ 66.00 |
| The Hartford | | | | | | $ - |
| Thyssenkrup | | | | | | $ - |
| True Green | | | | | | $ - |
| Tuition Express | $ 800.00 | | | | | $ 800.00 |
| UIA (QUARTERLY) | $ 3,560.89 | | | | | $ 3,560.89 |
| United States Trustee Fees | | | | | $ 500.00 | $ 500.00 |
| Water | | | | | $ 1,100.00 | $ 1,100.00 |
| Water | | | | | $ 150.00 | $ 150.00 |
| Voya | | | | | | $ - |
| Westbend | $ 866.00 | | | | | $ 866.00 |
| YP | $ 1,635.00 | | | | $ 1,635.00 | $ 3,270.00 |
| Misc | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 500.00 |
| Total Expenditures | $ 17,328.14 | $ 20,276.00 | $ 12,821.13 | $ 19,710.00 | $ 15,053.95 | $ 85,189.22 |
| Net Cash on Hand | $ 6,671.86 | $ 1,724.00 | $ 8,178.87 | $ 2,290.00 | $ 5,946.05 | $ 24,810.78 |
| | | | | | | 110,000.00 |